*11/19/09*

# IN THE CIRCUIT COURT OF
## ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Premier Bank, a Missouri state bank, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| City of Lake Saint Louis, Missouri | ) |
| | ) |
| Serve: City Clerk, City Attorney, or Mayor | ) |
| 200 Civic Center Drive | ) |
| Lake Saint Louis, MO 63367 | ) |
| (Hold for Service) | ) |
| | ) |
| Defendant. | ) |

Cause No. **0911 - CV11206**

Division No. **3**

**FILED**

**NOV 19 2009**

Judy Zerr
Circuit Clerk
ST. CHARLES COUNTY

## VERIFIED PETITION FOR
## DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Premier Bank, a Missouri state bank ("Plaintiff"), by and through its

attorneys, Law Office of Brad Goss, L.L.C. and Brad Goss, and for its Verified Petition

for Declaratory Judgment and Other Relief, states as follows:

### FACTS COMMON TO ALL ALLEGATIONS

1.      Plaintiff Premier Bank is a Missouri state bank with offices at 295 Salt

Lick Road, Suite 100, St. Peters, Missouri, in St. Charles County, Missouri.

2.      City of Lake Saint Louis, Missouri ("Defendant") is a city of the fourth

class with offices located at 200 Civic Center Drive, Lake Saint Louis, Missouri, in St.

Charles County, Missouri.

3.      Johnson-Yust Development Company, Inc. is a Missouri limited liability

company with its offices at 100 Midland Park Drive, O'Fallon, Missouri, in St. Charles

County, Missouri (the "Developer").

4.     Jurisdiction and venue are proper in this Court.

5.     The Developer or its affiliates are the fee owners of property legally described on the attached Exhibit A, incorporated herein by reference, which Property has been developed as a single family subdivision known as Mason Glen, in St. Charles County, Missouri (the "Property").

6.     Defendant First National Bank and Developer entered into a Grading and Soil Erosion Escrow Agreement as of June 17. 2005, pursuant to which the Developer provided a deposit or bond for $10,000 to Defendant for erosion control (the "Erosion Escrow") and a deposit or bond of $590,233,87 for grading and earthwork (the "Grading Escrow") (collectively, the "Original Grading/Erosion Escrow") for the Property.

7.     Under the terms of the Escrow Agreement, the Grading Escrow guaranteed "the completion of the earthwork improvements in [Mason Glen] in accordance with Grading Plans dated June 3, 2005" and the Erosion Escrow guaranteed "the compliance with the erosion control ordinance" of the Defendant.

8.     The grading of the Property was completed in 2006 by the Developer but the Defendant did not release the Grading Escrow but instead November of 2006 allowed the amount of the Grading Escrow to be reduced to $59,023.39.

9.     On or about January 2007, the Developer refinanced its loan for the Property with Plaintiff, and was required to replace the Original Grading/Erosion Escrow with a new escrow agreement between Developer, Plaintiff and Defendant, a copy of which is attached hereto and incorporated herein by reference (the "Replacement Grading/Erosion Escrow") as Exhibit B.

10.     After the completion of the grading of the Property, Defendant, Plaintiff and Developer entered into that certain Escrow Agreement Guaranteeing Subdivision Improvements dated as of June 13, 2006, pursuant to which the Developer provided an escrow sum of $398,772.43 (the "Original Improvement Escrow") guaranteeing the installation, construction and completion of the required subdivision improvement for Mason Glen Phase One Subdivision.

11.     The improvements for Mason Glen Phase One were substantially completed by Developer on November 3, 2006, on which date the Defendant agreed to the reduction of the Original Improvement Escrow to $39,877.24.

12.     On or about January 2007, Developer refinanced its loan for the Property with Plaintiff and was required to replace the Original Improvement Escrow with a new escrow agreement between Developer, Plaintiff and Defendant, a copy of which is attached hereto and incorporated herein by reference (the "Replacement Improvement Escrow") as Exhibit C.

13.     The City has claimed that Developer has abandoned the Property and made demand upon the Bank to release the remaining funds held under the Replacement Grading/Erosion Escrow and the Replacement Improvement Escrow pursuant to the letter dated November 10, 2009 attached hereto and incorporated herein by reference (the "Demand Letter") as Exhibit D.

## COUNT I
## DECLARATORY JUDGMENT

14.     Plaintiff hereby incorporates and restates its allegations set forth in paragraphs 1 through 13, inclusive, as though fully set forth herein.

3

15.     The Developer owns the Property and is continuing to sell homes at the Property and has performed work on the Property as recently as November 10, 2009, including various work to address alleged code violations raised by the City with respect to maintenance of the Property.

16.     Developer continues to assert ownership interests in the Property and the right to maintain the Property and build homes thereon.

17.     Defendant has cited Developer with various alleged code violations associated with maintaining vegetation on the Property that are misdemeanors subject to fine and possible imprisonment under the codes of the City, but offered to waive such fines and cease prosecution of such violations if the Developer will make demand on Plaintiff to release the funds held in the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow to the City, which Developer has refused to do.

18.     Defendant has designed an extensive public works project for the Property including regrading the Property, installing rip rap and other improvements, the estimated cost of which exceeds $140,000.

19.     The Defendant's plan to regrade and improve the Property is unnecessary for the maintenance of the Property.

20.     Defendant has demanded the release of the funds held by Plaintiff in the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow to the Defendant so that the Defendant may undertake this extensive public works project on the Property.

21.     At the time of creation of each of the Replacement Escrows, the Developer executed demand promissory notes in favor of Plaintiff providing for

4

advancement and funding under the notes ("Note") if demand was made by Defendant for payment under the Replacement Escrows.

22.     The advancement of proceeds to the Defendant under the Replacement Escrows without proper cause will impair the Defendant's ability to collect repayment under the Notes executed by Developer.

23.     Defendant claims that the choice of vegetation planted by the Developer in 2006 and 2007 was improper as not constituting "permanent ground cover" and therefore, in November 2009 the Defendant was justified in retaining 10% of the Original Grading/Escrow sum and demanding payment of such sum from Plaintiff.

24.     Section 89.410 of Missouri Revised Statutes requires that when improvements for which an escrow is established by a city in connection with a subdivision are substantially complete, the city must release all but 5% of the escrow sum to the developer.

25.     In November 2006, the grading and improvements for which the Original Grading/Erosion Escrow and Original Improvement Escrow were established were substantially complete but in contravention of the statute, the Defendant required that 10% as opposed to 5% of the escrow funds be retained.

26.     The assertions and actions of Defendant in claiming that the Developer has abandoned the Property, disputing, coercing and interfering with the rights of Developer in maintaining the Property and selling homes from the Property, improperly retaining escrow funds in excess of the amount permitted under Section 89.410R.S. Mo. and demanding payment of all escrowed funds held under the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow creates uncertainty with

respect to Plaintiff's rights and obligations under the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow.

27.     Allowing Defendant to improperly retain escrow sums held under the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow, to coerce the Developer, demand and misuse escrow funds held under the Replacement Grading/Erosion Escrow and Improvement Escrow prevents Developer from exercising its lawful rights under the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow.

28.     Developer has requested that Plaintiff not disburse any of the money being held under each of the Escrow Agreement.

29.     Plaintiff is entitled to be relieved of its obligation to disburse any of the money being held under each of the Escrow Agreements.

30.     Defendant claims to be entitled to payment of the money by Plaintiff or the funds being held by Plaintiff under each of the Escrow Agreements.

31.     Plaintiff suffers and will suffer irreparable harm unless Defendant is required to release escrow funds being wrongfully withheld, restrained from making wrongful demand on the remaining funds in the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow and prevented from coercive enforcement actions against the Developer.

32.     Plaintiff is without an adequate remedy at law as monetary damages cannot remedy Defendant's wrongful conduct, restore to Plaintiff the funds wrongfully withheld from Plaintiff, terminate the Escrow Agreements and relieve Plaintiff from any alleged obligations to the City under each of the Escrow Agreements.

WHEREFORE, for all of the aforementioned reasons, the Plaintiff respectfully requests that this Court will issue a final order in the form of a Declaratory Judgment declaring the rights of Plaintiff in and to the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow, ordering the release of that portion of each Escrow held by Defendant in excess of that allowed by law, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II
## ACTION IN RESCISSION OR IN THE ALTERNATIVE REFORMATION

33. Plaintiff hereby incorporates and restates her allegations referenced in paragraphs 1 through 32, inclusive, as referenced herein.

34. Section 89.410 RSMo. restricts the power of cities to establish and release escrow agreements with subdivision development.

35. The Replacement Grading/Erosion Escrow and Replacement Improvement Escrow are governed by Section 89.410 RSMo.

36. Section 89.410 RSMo. limited the amount the Defendant could require to be deposited in each of the Replacement Escrows to five percent of the original escrow sum.

37. Defendant required a deposit of ten percent of the original escrow sum for each of the Replacement Escrows, which amount was in excess of the amount permitted under Section 89.410 RSMo.

38. The Replacement Escrows are null and void in that the sums required to be deposited are in violation of Section 89.410RSMo.

39. Pleading in the alternative, the provisions of the Replacement Escrows requiring deposit in excess of the amount permitted under Section 89.410 RSMo. are null

7

and void and unenforceable and the Replacement Escrows should be interpreted to be in conformance with the limitations on the amount of the sums allowed under Section 89.410 RSMo. and thus limited to five percent of the original escrow sums.

WHEREFORE, Plaintiff respectfully requests judgment against the Defendant, including an order rescinding the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow or, in the alternative, limiting the amount held under each of the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow to five percent (5%) of the original escrow sum, together with such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III
## VIOLATION OF MISSOURI REVISED STATUTES SECTION 89.410

40.     Plaintiff hereby incorporates and restates its allegations referenced in paragraphs 1 through 39, inclusive, as referenced herein.

41.     Pursuant to Missouri Revised Statutes Section 89.410, a city may only impose requirements for the posting of bonds, letters of credit or escrows for subdivision-related improvements as provided in subsections 2 through 5 of Section 89.410 and "the release of any such escrow … shall be as specified in this section."

42.     Missouri Revised Statutes Section 89.410 provides that a city shall release escrowed funds within thirty (30) days of completion of each portion of work for which the escrow is held.

43.     Missouri Revised Statutes Section 89.410 provides that if a city has not released the escrow funds within thirty (30) days as provided, then the city shall pay the owner in addition to the escrow funds due the owner, interest at the rate of one and on-

8

half percent per month calculated from the expiration of the thirty (30) day period until the release of such funds.

44.     Defendant has failed to release the sums held under Replacement Grading/Erosion Escrow or Replacement Improvement Escrow as, among other things, Defendant continues to hold ten percent (10%) as opposed to five percent (5%) of the original escrow sums under each escrow, despite the work under each escrow agreement being substantially completed in November 2006.

45.     Defendant has failed to release the funds held under the Replacement Grading/Erosion Escrow or Replacement Improvement Escrow within thirty days from completion of the work under the respective Escrow Agreements.

46.     Missouri Revised Statutes Section 89.410 provides that an aggrieved owner may bring a civil action to enforce the provisions of that section.

47.     Missouri Revised Statutes Section 89.410 provides that the court may award the prevailing party all costs attributable to the action including reasonable attorney fees.

Wherefore, Plaintiff respectfully requests the Court to issue judgment in its favor and against the Defendant to release all funds held under the Replacement Grading/Erosion Escrow or Replacement Improvement Escrow, for interest at the rate of one and one half percent per month on the one half of the amount of the escrowed funds as accrued from November 2006, and the remaining amount of the escrowed funds as accrued from thirty days after completion of the work under the respective Escrow Agreements,  together with attorneys' fees, expenses, and costs of this action, and for such other additional relief as this Court may deem just and proper under the circumstances.

## COUNT IV
## INJUNCTION

48.    Plaintiff hereby incorporates and restates the allegations numbered paragraphs 1 through 47, inclusive, as referenced herein.

49.    Defendant is asserting claims and rights over the sums held in escrow by Plaintiff under the Replacement Grading/Erosion Escrow and Replacement Improvement Escrow, including demanding payment of all sums held thereunder for use by Defendant without any accounting to Plaintiff.

50.    Defendant is not entitled to the sums held by Plaintiff in the Grading/Erosion Escrow and Replacement Improvement Escrow.

51.    Plaintiff is without an adequate remedy at law as monetary damages cannot remedy Defendant's wrongful conduct, restore to Plaintiff the funds wrongfully withheld from Plaintiff, terminate the Grading/Erosion Escrow and Replacement Improvement Escrow and relieve Plaintiff from any alleged obligations to the Defendant under each of the Grading/Erosion Escrow and Replacement Improvement Escrow.

52.    Section 526.030 authorizes the entry of injunctive relief when irreparable injury to real property is threatened or to prevent a legal wrong for which an adequate remedy cannot be afforded by an action for damages.

53.    Without the entry of injunctive relief, Plaintiff will suffer irreparable injury to its property by the misappropriation of such funds by Defendant.

WHEREFORE, Plaintiff respectfully requests the Court to issue an Injunction in favor of the Plaintiff and against the Defendant enjoining Defendant from making any claims upon or taking any action with respect to the sums held in escrow under the Grading/Erosion Escrow and Replacement Improvement Escrow, asserting any rights

with respect thereto or seeking to impose any obligations upon Plaintiff under the

Grading/Erosion Escrow and Replacement Improvement Escrow, and for any other

additional relief as this Court may deem just and proper under the circumstances.

Respectfully Submitted,

Law Office of Brad Goss, LLC

By: _____
John Bradford Goss   #36266
1475 Fairgrounds Road, Suite 102
St. Charles, MO 63301
636-916-3100
636-916-3205 (fax)
*Counsel for Plaintiff Premier Bank*

Bobroff, Hesse, Lindmark and
Martone, PC

By: _____
Marvin Lindmark #41880
1650 Des Peres Road Suite 200
St. Louis, MO 63131
314-862-0300
314-862-7010 (fax)

*Co-Counsel for Plaintiff Premier Bank*

VERIFICATION

Darrell Roeger, St. Louis Market President of Premier Bank, a Missouri state bank, on

behalf of Plaintiff, Premier Bank, verifies that the facts and allegations in the Verified

Petition for Declaratory Judgment and Other Relief are true and accurate to the best of

my knowledge and belief.

Darrell Roegner

2006111600009620  11/12
Bk:DE4624 Pg:1036

Exhibit "A"

Parcel 1:

A tract of land in Fractional Sections 8 and 9, Township 46 North, Range 2 East of the Fifth Principal Meridian, St. Charles County Missouri being more particularly described as follows:

Commencing at the intersection of the North line of property conveyed to Henry Harvey Jr. Trustee by deed recorded in Book 2128 Page 346 of the St. Charles County Records with the West line of "The Manors at Glen Brook Plat Two", a subdivision according to the plat thereof recorded in Plat Book 41 Pages 22 and 23 of the St. Charles County Records; thence along the said North line of the Harvey Property, North 89 degrees 35 minutes 06 seconds West 278.39 feet to the actual point of beginning of the property described herein: thence along the West line of said Harvey Property, South 00 degrees 24 minutes 35 seconds West 621.55 feet; thence North 89 degrees 35 minutes 06 seconds West 280.33 feet to the East line of property conveyed to Mary Gore by deed recorded in Book 3875 Page 10 of said records; thence along said East line of The Mary Gore Property, North 00 degrees 24 minutes 35 seconds East 138.86 feet to the Northeast corner of said Mary Gore property; thence along the North line of said Mary Gore Property, North 89 degrees 35 minutes 25 seconds West 179.10 feet to the East line of property conveyed to Yvonne Gore by Deed recorded in Book 911 Page 404 of said records; thence along said East line of The Yvonne Gore property, South 00 degrees 24 minutes 35 seconds West 720.31 feet to the North line of Missouri State Highway N, said point being 30.00 feet perpendicularly distant North of centerline station 473+53.49; thence along the North line of said Missouri State Highway N, being 30 feet perpendicularly North of and parallel to the centerline of said Missouri State Highway N. North 83 degrees 12 minutes 54 seconds West 753.79 feet to a point being 30.00 feet perpendicularly distant North of centerline station 465+99.71; thence along the East line of property conveyed to Robert J. Kunzi, Trustee by deed recorded in Book 1925 Page 213 of said records, North 00 degrees 02 minutes 26 seconds West 485.91 feet; thence along the North line of the following properties, said Kunzi property, property conveyed to Highway N Partners, L.L.C. by deed recorded in Book 3086, Page 216, property conveyed to Gerald A. Keeven, etal by deed recorded in Book 3223, Page 35, property conveyed to G & J Keeven, L.L.C. by deeds recorded in Book 4020 Page 1189 and Book 4020 Page 1199 of said records, property conveyed to Gary Corcoran and Carol Corcoran by deed recorded in Book 2151, Page 1034, property conveyed to Sharon Gardner by deed recorded in Book 4004, Page 1883 and property conveyed to Christine C. McKee by deed recorded in Book 2562 Page 361 of said records, North 82 degrees 22 minutes 34 seconds West 2347.40 feet to a point in the centerline of Duello Road; thence along said centerline of Duello Road, North 00 degrees 15 minutes 18 seconds East 989.94 feet to the South line of property conveyed to Ernest T. Catrett and Lynn M. Catrett by deed recorded in Book 1104, Page 382 of said records; thence along said South line, South 89 degrees 13 minutes 57 seconds East 422.13 feet to the West line of property conveyed to Robert J. Mareing and Nancy J. Mareing by deed recorded in Book 1296, Page 1870 of said records; thence along said West line, South 00 degrees 03 minutes 03 seconds East 211.77 feet to the South line of the Mareing Property; thence along said South line of the Mareing property and South line of property conveyed to Helene Oltman by deed recorded in Book 2162, Page 1322 of said records, South 89 degrees 13 minutes 57 seconds East 600.00 feet to the West line of property conveyed to Roger Wehmeyer and Tammy L. Wehmeyer by deed recorded in Book 3273, Page 1398 of said records; thence along said West line of the Wehmeyer property, South 00 degrees 03 minutes 03 seconds West 254.10 feet; thence along the South line of said Wehmeyer property and the South line of property conveyed to Roger and Tammy L.Wehmeyer by deed recorded in Book 2085, Page 944 of said records, South 89 degrees 13 minutes 57 seconds East 400.00 feet; thence along the East line of said Wehmeyer property, North 00 degrees 03 minutes 03 seconds East 979.62 feet to the centerline of Orf Road; thence along the said centerline of Orf Road South 89 degrees 12 minutes 06 seconds East 917.00 feet to the West line of property conveyed to Ivory T. Hodge by deed recorded

EXHIBIT A

RECORD AS IS

2006111500098052O 12/12
Bk:DE4624 Pg:1037

Exhibit "A" (cont.)

In Book 2449, Page 1757 of said records; thence along the West line of said Hodge property and the West line of property conveyed to Rudolph Hodge by deed recorded in Book 540, Page 930 of said records, South 00 degrees 34 minutes 18 seconds West 1147.87 feet; thence along the South line of the following properties, said Rudolph Hodge property conveyed to Otis Davis by deed recorded in Book 824, Page 1701, property conveyed to Otis Davis by deed recorded in Book 1358,Page 940 and the South line of property conveyed to Ralph G. Neely by deed recorded in Book 3122, Page 1671 of said records, South 89 degrees 35 minutes 06 seconds East 1210.23 feet to the point of beginning containing 90.151 acres.

Excepting therefrom Mason Glen Plat 1, recorded in Plat Book 44 Page 40.

Parcel 2:

A TRACT OF LAND IN FRACTIONAL SECTION 9, TOWNSHIP 46 NORTH RANGE 2 EAST OF THE FIFTH PRINCIPAL MERIDIAN, ST. CHARLES COUNTY MISSOURI BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTH LINE OF PROPERTY CONVEYED TO HENRY HARVEY JR. TRUSTEE BY DEED RECORDED IN BOOK 2126 PAGE 346 OF THE ST. CHARLES COUNTY RECORDS WITH THE WEST LINE OF " THE MANORS AT GLEN BROOK PLAT TWO" A SUBDIVISION ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 41 PAGES 22 AND 23 OF THE ST. CHARLES COUNTY RECORDS; THENCE ALONG THE SAID WEST LINE OF " THE MONORS AT GLEN BROOK PLAT TWO " , SOUTH 00 DEGREES 27 MINUTES 32 SECONDS WEST 1224.26 FEET TO THE NORTH LINE OF MISSOURI STATE HIGHWAY N; THENCE ALONG SAID NORTH LINE OF SAID HIGHWAY N, ALONG A CURVE TO THE RIGHT WHOSE CHORD BEARS SOUTH 82 DEGREES 53 MINUTES 59 SECONDS WEST 260.95 FEET AND WHOSE RADIUS POINT BEARS NORTH 20 DEGREES 59 MINUTES 08 SECONDS WEST 543.69 FEET FROM THE LAST MENTIONED POINT, AN ARC DISTANCE OF 263.52 FEET; AND NORTH 83 DEGREES 12 MINUTES 54 SECONDS WEST 18.74 FEET TO THE EAST LINE OF PROPERTY CONVEYED TO RICHARD HARVEY AND MAXINE HARVEY BY DEED RECORDED IN BOOK 1159 PAGE 1774 OF THE ST. CHARLES COUNTY RECORDS; THENCE ALONG SAID EAST LINE OF THE HARVEY PROPERTY, NORTH 00 DEGREES 24 MINUTES 35 SECONDS EAST 1256.31 FEET TO THE AFORESAID NORTH LINE OF THE HENRY HARVEY PROPERTY; THENCE ALONG SAID NORTH LINE , SOUTH 89 DEGREES 35 MINUTES 06 SECONDS EAST 278.39 FEET TO THE POINT OF BEGINNING, CONTAINING 7.988 ACRES.

Parcel 3:

Lots 1-34, 46-52, 108-120, 164-195, 200-202 of Mason Glen Plat 1 , as per plat thereof recorded in Plat Book 44 Pages 40-42 of the St. Charles County Records.

Parcel 4:

Lots 196-199 of Mason Glen Plat One , as per plat thereof recorded in Plat Book 44 Pages 40-42 of the St. Charles County Records.

RECORD AS IS

REPLACEMENT ESCROW

THREE (3) ORIGINALS
FORWARDED TO CITY CLERK
05/04/07

## GRADING AND SOIL EROSION ESCROW AGREEMENT

THIS ESCROW AGREEMENT made and entered into by **JOHNSON YUST DEVELOPMENT, CO. INC.** herein called the DEVELOPER, and **PREMIER BANK**, herein called ESCROW/BOND HOLDER and the CITY OF LAKE SAINT LOUIS, MISSOURI, herein called the CITY:

WITNESSETH:

WHEREAS, the DEVELOPER has submitted plans, information and data to the CITY for an application for a grading permit for MASON GLEN, and requesting approval for same; and

WHEREAS, the DEVELOPER is seeking approval of the CITY for the issuance of a grading permit; and

WHEREAS, the CITY CODE of the CITY OF LAKE SAINT LOUIS provides for the establishment of escrow accounts to assure completion of the grading and compliance of the soil erosion ordinance; and

WHEREAS, the grading and erosion control plans have been approved by the City's Engineer, and in accordance with the provisions of Ordinance 557, the sum of **FIFTY NINE THOUSAND TWENTY THREE AND 39/100 DOLLARS ($59,023.39)** for grading and earthwork escrow, lawful money of the United States of America or Bonds, shall be posted as escrows to assure completion of the erosion and grading on said property.

NOW, THEREFORE, in consideration of the covenants, promises and agreement herein provided:

IT IS HEREBY MUTUALLY AGREED:

1. That the DEVELOPER has deposited or provided bonding in the sum(s) of TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) to the CITY for erosion control, herein called the EROSION ESCROW and **FIFTY NINE THOUSAND TWENTY THREE AND 39/100 DOLLARS ($59,023.39)** for grading and earthwork, herein called the GRADING ESCROW, with the ESCROW/BOND HOLDER, as escrows guaranteeing the construction and completion of the soil erosion and the grading/earthwork for MASON GLEN, Lake Saint Louis, Missouri, in accordance with the approved plans therefore and in accordance with the ordinances of the CITY regulating the same.
2. That the EROSION ESCROW guarantees the compliance of the erosion control ordinance and the GRADING ESCROW guarantees completion of the earthwork improvements in the aforesaid development in accordance with Grading Plans dated June 3, 2005, a copy of which shall be maintained in the official records for the Department of Community Development.

EXHIBIT B

3. That the ESCROW HOLDER shall only release the escrows upon inspection and approval by the City Administrator or his authorized agent.

4. That in the event that the DEVELOPER shall abandon the project or fail to complete the improvements, upon due demand of the CITY, the CITY or ESCROW HOLDER, shall pay over the EROSION ESCROW or GRADING ESCROW, or portion thereof, to finish, landscape MASON GLEN in a fashion that said site will not impair the public health, safety, and welfare or materially impair the standards or property values of the area.  Any balance of the escrow sum(s), if any shall be released to the DEVELOPER.

5. That the CITY hereby accepts this agreement as a satisfactory Escrow Agreement under the provisions and requirements of the City Code and Ordinances, but this Escrow Agreement is without prejudice to the right of the CITY to pursue any lawful remedies available to in addition to the escrow fund(s) to provide for the completion, improvement or demolition of the DEVELOPER'S property.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands this _____ day of _____ A.D. 2006.

_____     By _VICE  PRESIDENT_____
**Developer**                                                            **Title:**
Johnson Yust Development Company Co., Inc.


ATTEST: _Stacey Diderich_____                    (seal)


_PREMIER  BANK_____            By _____
**Escrow Holder**                                        **Title:**

ATTEST: _Molly Rittjar_____                    (seal)


CITY OF LAKE SAINT LOUIS


ATTEST: _____            By _____
              **City Clerk**                                    **City Administrator**

                                                                        (seal)



ENGINEERING

PLANNING

SURVEYING

ESCROW COST ESTIMATE
MASON GLEN
BAX PROJECT NO. 04-12838
GRADING OPERTAION
June 6, 2005
Revised June 16, 2005

**SEDIMENT/EROSION CONTROL**

| DESCRIPTION | QUANTITY | UNIT COST | | TOTAL | |
|---|---|---|---|---|---|
| Siltation Control | 8,585 L.F. | $ | 2.00 L.F. | $ | 17,170.00 |
| Revegetation (Seed & Mulch) | 73 AC. | $ | 1,200.00 AC. | $ | 87,600.00 |
| Earth Diversion Swale | 5,115 L.F. | $ | 0.50 L.F. | $ | 2,557.50 |
| Sediment Trap Construction | 7 EA. | $ | 2,000.00 EA. | $ | 14,000.00 |
| Construction Wash-Off Area | 1 EA. | $ | 2,000.00 EA. | $ | 2,000.00 |
| Ditch Checks | 113 EA. | $ | 40.00 EA. | $ | 4,520.00 |
| | | | SUB-TOTAL | $ | 127,847.50 |

**EARTHWORK**

| DESCRIPTION | QUANTITY | UNIT COST | | TOTAL | |
|---|---|---|---|---|---|
| Excavation | 252,000 C.Y. | $ | 1.00 C.Y. | $ | 252,000.00 |
| Clearing and Burning | 65 AC. | $ | 2,800.00 AC. | $ | 182,280.00 |
| | | | SUB-TOTAL | $ | 434,280.00 |

|  | | |
|---|---|---|
| SUB-TOTAL | $ | 562,127.50 |
| MODIFICATION FACTOR | $ | 28,106.38 |
| GRAND TOTAL | $ | 590,233.88 |

BAX ENGINEERING CO., INC.
1052 South Cloverleaf Drive
St. Peters, MO 63376-6445
636-928-5552   FAX 928-1718

REPLACEMENT ESCROW

THREE (3) ORIGINALS
FORWARDED TO CITY CLERK
05/04/07

## ESCROW AGREEMENT
## GUARANTEEING SUBDIVISION IMPROVEMENTS

THIS ESCROW AGREEMENT made and entered into by **Johnson Yust Development, Co. Inc.**, herein called DEVELOPER, and **Premier Bank**, herein called ESCROW HOLDER, and THE CITY OF LAKE SAINT LOUIS, MISSOURI, herein called the CITY:

WITNESSETH:

WHEREAS, the DEVELOPER has submitted plans, information and data to the CITY for the creation and development of a subdivision to be known as **Mason Glen Phase One**, and requesting approval for same; and

WHEREAS, the subdivision plans have been approved and the CITY ADMINISTRATOR has reasonably estimated and determined that the cost of construction, installation and completion of the subdivision improvements, in accordance with the Lake Saint Louis City Code, will be in the sum of **Thirty Nine Thousand Eight Hundred Seventy Seven and 27/xx** DOLLARS (**$39,877.24**) lawful money of the United States of America; and

WHEREAS, the DEVELOPER is seeking CITY approval of the final plat of aforesaid subdivision; and

WHEREAS, the Lake Saint Louis City Code provides, inter alia that the final plat of the said subdivision may be approved by the CITY upon the DEVELOPER submitting satisfactory escrow agreement guaranteeing the construction of the said subdivision improvements in accordance with the approved plans and City Code;

NOW, THEREFORE, in consideration of the covenants, promises and agreement herein provided:

IT IS HEREBY MUTUALLY AGREED:

1.    That the DEVELOPER has deposited the sum of **Thirty Nine Thousand Eight Hundred Seventy Seven and 24/xx** DOLLARS (**$39,877.24**) lawful money of the United States of America, herein called ESCROW SUM, with the ESCROW HOLDER, as an escrow guaranteeing the installation, construction and completion of the required subdivision improvements in **Mason Glen Phase One**, Subdivision, all in accordance with the approved plans therefore and in accordance with the City Code regulating the same.

1

EXHIBIT C

2. That the ESCROW SUM will be held in escrow by the ESCROW HOLDER in a special escrow account, subject to the special audit of the CITY ADMINISTRATOR.

3. That the ESCROW SUM guarantees the construction, installation and completion of the improvements in the aforesaid Subdivision in accordance with the approved plans dated **Last Revision 12/08/05 Approved 01/19/06**, a copy of which shall be maintained in the official records for said Subdivision, and the specifications for said Subdivision, which has also been filed with the City of Lake Saint Louis Official Records all of which are also made a part hereof as though set forth herein word for word.

4. That in the event the ESCROW sum herein provided is insufficient to complete said Subdivision improvements, the DEVELOPER will deposit with the ESCROW HOLDER that additional sum of lawful money of the United States of America that will be required to complete the said improvements; said additional sum to be subject to the terms of this Escrow Agreement.

5. That the DEVELOPER guarantees that all required utilities and improvements will be installed, constructed and completed to the satisfaction of the official utility companies, within **twelve (12) months** from the date of the approval of said Subdivision and the DEVELOPER shall furnish upon the completion of the said improvements a Certificate of Completion by a licensed engineer engaged to supervise the construction, installation and completion of said improvements, all as provided in the Lake Saint Louis City Code. In the event the required utilities and improvements are not completed within **twelve (12) months** from the date of approval of the subdivision, the DEVELOPER shall petition, in writing, the CITY stating the reasons for non-completion. The CITY, at its own option and conditions, may grant an extension.

6. That the ESCROW HOLDER shall only release or disburse the ESCROW SUM or portion thereof upon receipt and in the amount set forth in a written authorization from the said CITY ADMINISTRATOR addressed to the ESCROW HOLDER; which authorization may be for the payment of labor and materials used in the construction, installation and completion of the said improvements, as the work progresses under the supervision of a qualified, licensed engineer, as provided in the Lake Saint Louis City Code, said engineer to certify such work and materials to the CITY ADMINISTRATOR.

7. That in the event that the DEVELOPER shall either abandon the subdivision or shall fail to complete the subdivision improvements within **twelve (12) months** after the date of the

CITY'S approval of the subdivision plat (or within any such extension as may have been granted by the CITY in accordance with this Agreement), the CITY ADMINISTRATOR may certify such abandonment or failure of completion to the ESCROW HOLDER who shall disburse the ESCROW SUM therefore as ordered and directed by the CITY ADMINISTRATOR. The CITY may then use the escrow funds, at its discretion, either to complete the subdivision improvements or for such related purpose as it may seem reasonably appropriate to ensure the safety, security, beauty and convenience of the subdivision of the surrounding area. For the purposes of this paragraph, the DEVELOPER shall conclusively be deemed to have abandoned the subdivision if the CITY ADMINISTRATOR determines that there has been no substantial site work for a continuous period of **three (3) months**.

8.   That ten percent (10%) of the sum deposited in the ESCROW ACCOUNT shall be retained in said Account, as a bond to assure the satisfactory condition and maintenance of the public improvements of the subdivision dedicated to the City, for a period of **twelve (12) months** following the effective date of the Ordinance accepting the dedication.

9.   The CITY hereby accepts this Agreement as a satisfactory Escrow Agreement under the provision and requirements of the Lake Saint Louis City Code.

10.   This Escrow Agreement is without prejudice to the right of the CITY to pursue any lawful remedies available to it, in addition to this escrow fund, to provide for the installation, construction and completion of said Subdivision improvements.

11.   It is further agreed to by the ESCROW HOLDER: (A) that in full consideration of its covenants, promises and agreements, the ESCROW HOLDER has received the sum of **Thirty Nine Thousand Eight Hundred Seventy Seven and 24/xx** DOLLARS (**$39,877.24**) lawful money and other valuable considerations, receipt thereof from the DEVELOPER being hereby admitted and acknowledge; and (B) that the ESCROW HOLDER hereby acknowledges the receipt and deposit of the ESCROW SUM and guarantees that the same shall be held as hereinabove provided and shall be released only in accordance with the terms herein set forth.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this _____ day of _____A.D., 2006.


**Johnson Yust Development Co. Inc.**
**Developer**

By: _____

Address: **100 Midland Park Dr**

**O'Fallon MO  63366**

Telephone: **636-887-4120**


Attest: _____
        Secretary

(Seal)

By: _____

Address: 4 Richmond Center Ct.
         St. Peters MO  63376

**Premier Bank**
**Escrow Holder**


Attest: _____
        Secretary

(Seal)

CITY OF LAKE SAINT LOUIS
     **CITY**

By: _____
     **City Administrator and/or Mayor**


Attest: _____
     **City Clerk**

**(Seal)**


     N.B.   The Signatures of the DEVELOPER and ESCROW HOLDER are to be acknowledged before a Notary Public.  In the case of a partnership, all partners must sign.  In the case of a corporation, the affidavits of the corporation secretary setting forth the authority of the signing officer and the acknowledgement of the corporation act must be attached.


APPROVED: _____
     City Attorney

Building Permit Fee _____
Date Paid _____
Received by _____


Revised:  02-15-94    Per: RN
Revised:   10-27-99    Per: DST
Revised:   01-20-00    Per: PM

MASON GLEN
ESCROW COST ESTIMATE
BAX PROJECT NO. 04-12838
June 9, 2006
PAGE 1

**STREETS (DISPLAY COURT)**

| DESCRIPTION | QUANTITY | | UNIT COST | | | TOTAL | |
|---|---|---|---|---|---|---|---|
| 7" Non-Reinforced P.C. Concrete w/rolled curb | 2,089 | S.Y. | $ | 19.00 | S.Y. | $ | 39,691.00 |
| 6" Aggregate Base | 2,089 | S.Y. | $ | 6.00 | S.Y. | $ | 12,534.00 |
| Street Signs | 6 | EA. | $ | 100.00 | EA. | $ | 600.00 |
| | | | SUB TOTAL | | | $ | 52,825.00 |

**DISPLAY CT INSTALLED**                          10%          $        5,282.50

**STREETS REMAINING PH. 1**

| DESCRIPTION | QUANTITY | | UNIT COST | | | TOTAL | |
|---|---|---|---|---|---|---|---|
| 7" Non-Reinforced P.C. Concrete w/rolled curb | 14,963 | S.Y. | $ | 19.00 | S.Y. | $ | 284,297.00 |
| 6" Aggregate Base | 14,963 | S.Y. | $ | 6.00 | S.Y. | $ | 89,778.00 |
| Street Signs | 6 | EA. | $ | 100.00 | EA. | $ | 600.00 |
| | | | SUB TOTAL | | | $ | 374,675.00 |

**SANITARY SEWER**

| DESCRIPTION | QUANTITY | UNIT COST | TOTAL |
|---|---|---|---|
| St. Charles County Public Water Supply District No. 2 | N/A | N/A | N/A |

(Escrow w/Public Water Supply District No. 2)

**STORM SEWER**

| DESCRIPTION | QUANTITY | | UNIT COST | | | TOTAL | |
|---|---|---|---|---|---|---|---|
| 12" R.C.P. Pipe | 2,218 | L.F. | $ | 13.00 | L.F. | $ | 28,834.00 |
| 15" R.C.P. Pipe | 383 | L.F. | $ | 15.00 | L.F. | $ | 5,745.00 |
| 18" R.C.P. Pipe | 455 | L.F. | $ | 16.50 | L.F. | $ | 7,507.50 |
| 21" R.C.P. Pipe | 315 | L.F. | $ | 22.00 | L.F. | $ | 6,930.00 |
| 24" R.C.P. Pipe | 176 | L.F. | $ | 24.00 | L.F. | $ | 4,224.00 |
| 30" R.C.P. Pipe | 532 | L.F. | $ | 36.00 | L.F. | $ | 19,152.00 |
| 36" R.C.P. Pipe | 726 | L.F. | $ | 55.00 | L.F. | $ | 39,930.00 |
| 12" F.E.S. w/Cutoff Wall | 2 | EA. | $ | 350.00 | EA. | $ | 700.00 |
| 15" F.E.S. w/Cutoff Wall | 1 | EA. | $ | 400.00 | EA. | $ | 400.00 |
| 21" F.E.S. w/Cutoff Wall | 1 | EA. | $ | 450.00 | EA. | $ | 450.00 |
| 36" F.E.S. w/Cutoff Wall | 2 | EA. | $ | 1,000.00 | EA. | $ | 2,000.00 |
| Area Inlet | 20 | EA. | $ | 755.00 | EA. | $ | 15,100.00 |
| Double Area Inlet | 1 | EA. | $ | 1,800.00 | EA. | $ | 1,800.00 |
| Curb Inlet | 26 | EA. | $ | 775.00 | EA. | $ | 20,150.00 |
| Manhole | 5 | EA. | $ | 1,000.00 | EA. | $ | 5,000.00 |

MASON GLEN
ESCROW COST ESTIMATE
BAX PROJECT NO. 04-12838
November 21, 2005
PAGE 2

| STORM SEWER (Continued) | | | | |
|---|---|---|---|---|
| DESCRIPTION | QUANTITY | UNIT COST | | TOTAL |
| Rip Rap | 33 S.Y. | $ 30.00 S.Y. | $ | 990.00 |
| Concrete Swale | 3,461 S.F. | $ 4.75 S.F. | $ | 16,439.75 |
| Granular Fill (Bedding) | 714 TNS. | $ 9.00 TNS. | $ | 6,426.00 |
| Granular Fill (Crossing) | 174 TNS. | $ 9.00 TNS. | $ | 1,566.00 |
| Water Jetting | 4,805 L.F. | $ 1.00 L.F. | $ | 4,805.00 |
| | | SUB TOTAL | $ | 188,149.25 |
| STORM SEWER INSTALLED | | 10% | $ | 18,814.93 |

| WATER | | | |
|---|---|---|---|
| DESCRIPTION | QUANTITY | UNIT COST | TOTAL |
| St. Charles County Public Water Supply District No. 2 | N/A | N/A | N/A |

(Escrow w/Public Water Supply District No. 2)

GRAND TOTAL $ 398,772.43



*ARMSTRONG* TEASDALE *LLP*

Matthew J. Reh
(314) 552-6617 (phone)
(314) 612-2388 (facsimile)
mreh@armstrongteasdale.com

| ILLINOIS | KANSAS | MISSOURI | NEVADA | SHANGHAI |
|---|---|---|---|---|

ATTORNEYS AT LAW

November 10, 2009

Mr. Brad Goss
Law Office of Brad Goss, L.L.C.
1475 Fairgrounds Drive, Suite 102
St. Charles, Missouri 63301

Re:   **Grading and Soil Erosion Escrow Agreement (the "Erosion and Grading Escrow") by and among Johnson-Yust Development Company, Inc. ("Developer"), Premier Bank ("Bank"), and the City of Lake Saint Louis, Missouri ("City")**

**Escrow Agreement Guaranteeing Subdivision Improvements by and among Developer, Bank, and the City (the "Subdivision Escrow"; together, with the Erosion and Grading Escrow, the "Escrow Agreement")**

Dear Mr. Goss:

I represent the City in connection with the above-referenced Escrow Agreements. The Developer is the developer of Mason Glen, a residential subdivision located in the City. In connection with its approval of the Mason Glen subdivision, the Developer agreed to perform certain work and make certain improvements to Mason Glen. These obligations were secured, in part, by the above-referenced Escrow Agreements, under which the Bank, your client, is holding funds placed in escrow by the Developer.

The Developer has abandoned the Mason Glen project. Repeated letters and notices from the City to the Developer have gone unheeded. It is our understanding that the City has issued various citations to the Developer in connection with Mason Glen for its failures to perform work and maintain Mason Glen.

Among other things, the Developer failed to establish permanent ground cover on the graded site. The Developer planted wheat. Neither the City nor the Missouri Department of Natural Resources recognize wheat as a permanent ground cover. Due this and other inadequacies, the City has retained 10% of the escrow.

ONE METROPOLITAN SQUARE  |  SUITE 2600  |  ST. LOUIS, MISSOURI 63102-2740  |  TEL: 314.621.5070  |  FAX: 314.621.5065

www.armstrongteasdale.com

EXHIBIT D



*ARMSTRONG TEASDALE LLP*

By letter dated July 31, 2009, the City demanded that the Bank pay it the amount held in the Erosion and Grading Escrow, which the City believes is approximately $59,023.39, so that the City could complete or correct deficient work regarding erosion problems and grading problems in Mason Glen.  As you know, the Erosion and Grading Escrow not only guarantees compliance with the City's erosion control ordinance and completion of the earthwork and grading improvements of Mason Glen, but also provides that in the event the Developer abandons the project, the Bank shall pay the escrow over to the City to "finish, landscape MASON GLEN in a fashion that said site will not impair the public health, safety, and welfare or materially impair the standards or property values of the area."

By letter dated September 2, 2009, the City demanded that the Bank pay it the amount held in the Subdivision Escrow, which the City believes is approximately $39,877.24, so that the City could complete subdivision improvements within Mason Glen and correct deficient subdivision improvement work in Mason Glen.  The Subdivision Escrow not only guarantees completion and construction of the required subdivision improvements for Phase One of Mason Glen but also provides that if the Developer abandons the subdivision or fails to complete the subdivision improvements, the Bank shall pay the escrow over to the City so that the City may use such funds to complete the subdivision improvements "or for such related purpose as it may seem reasonably appropriate to ensure the safety, security, beauty and convenience of the subdivision [or] the surrounding area."

I have reviewed your letter of September 28, 2009.  The City disagrees with your analysis.  The City is demanding the sums held in the Escrow Agreements in order to complete work that the Developer never performed or to rectify work that was performed by the Developer in a deficient manner.  On September 1, 2009, Derek Koestel, the Public Works Director for the City, sent you an e-mail with various attachments, including a letter dated June 1, 2009 from Maria King.  Ms. King's letter attached a spreadsheet of deficiencies from a May 29, 2009 inspection.  It is the City's contention that all of the items listed on this spreadsheet come within the scope of either or both Escrow Agreements (with the exception of the item listed as "Mow tall grass").

I am also enclosing a spreadsheet of the bids received from various bidders responding to a request for bids circulated by the City with respect to the incomplete work and defective work needing to be completed or remedied in Mason Glen.  The bidding manual is also enclosed for your reference.  The average cost for the necessary work to bring Mason Glen into compliance is approximately $140,950.00 to $145,787.20 plus an additional $20,000.00 to $40,000.00 for time and material.

Please consider this letter as the City's final demand that the Bank pay over to the City the funds being held by the Bank pursuant to the Escrow Agreements so that the City can complete the incomplete work or rectify the deficient work of the Developer in Mason Glen.  As indicated in the City's previous letters to the Bank, any funds not expended by the City upon completion of the work will be returned to the Developer.

Mr. Brad Goss
November 10, 2009
Page 3



*ARMSTRONG* TEASDALE LLP

     The City has authorized us to take all necessary actions to protect its rights under the Escrow Agreements.   Please notify us of your client's decision on or before Wednesday, November 18, 2009.

     I await your reply.

              Sincerely,

              Matthew J. Reh

MJR:cfb
Enclosures